IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) STEPHEN RHODES, an individual, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 21-CV-058-KEW |
| (1) WAL-MART STORES EAST, LP, a foreign corporation, | ) ) ) ) | Jury Trial Demanded |
| (2) WALMART, INC., a foreign corporation, | ) ) | Attorney Lien Claimed for the Firm |
| (3) WAL-MART ASSOCIATES, INC., a foreign corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Stephen Rhodes ("Plaintiff"), through his attorneys of record, Charles C. Vaught and Jessica N. Vaught of *Armstrong & Vaught, P.L.C.* and brings this action pursuant to the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2615 *et. seq.* (the "FMLA") and against Defendants, Wal-Mart Stores East, LP, Walmart, Inc., and Wal-Mart Associates, Inc. ("Defendants"). In support thereof, Plaintiff hereby states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff was, at all times relevant to this cause of action, employed by Defendants within the Eastern District of Oklahoma.

2. Plaintiff was, at all times relevant to this cause of action, domiciled in and a citizen of the State of Oklahoma.

1

3. Plaintiff was, at all relevant times, an employee as defined by the FMLA in that he was employed with Defendants in excess of twelve (12) months and, during that time, worked in excess of 1,250 hours.

4. Plaintiff suffered from a "serious health condition(s)." More particularly, Plaintiff suffered from seizures that can require hospitalization. Plaintiff's condition required him to miss work, thus making him eligible for the protections afforded by the FMLA, though Plaintiff was denied those protections.

5. Defendants are each an employer under the FMLA in that, at all relevant times, Defendants employed more than 50 employees within a 75-mile radius of Plaintiff's primary work site during each of 20 or more calendar workweeks in the current preceding calendar year.

6. Defendants were, collectively, Plaintiff's joint employers at all times relevant to this Complaint in that Defendant Wal-Mart Stores East, LP was controlled by Defendant Walmart, Inc., who set forth all operating procedures and rules regarding personnel decisions and medical leaves under which Defendant Wal-Mart Stores East, LP operated and which controlled the operations of Defendant Wal-Mart Stores East, LP. On information and belief, Defendant Wal-Mart Associates, Inc. was a payroll corporation controlled by Defendant Walmart, Inc. and was the entity from which Plaintiff received his pay.

7. The acts and/or omissions giving rise to this lawsuit occurred in Sallisaw, Sequoyah County, State of Oklahoma.

8. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the parties and the subject matter of this action, because the action arises under the laws of the United States.

9. Pursuant to 28 U.S.C. § 1391(b), this action properly lies in the Eastern District of Oklahoma, because a substantial portion of the events or omissions giving rise to this claim occurred in the Eastern District of Oklahoma.

## OPERATIVE FACTS

10. Defendants initially hired Plaintiff as a Night Stocker on July 1, 2015 at Store No. 47 located in Sallisaw, OK. At the times relevant to the Complaint, Plaintiff was employed as a Lawn and Garden Associate.

11. Plaintiff suffers from epilepsy, which has manifested itself in seizures, fatigue, headaches, lightheadedness, confusion, loss of consciousness and anxiety.

12. In 2018, Plaintiff had multiple stays in the hospital due to his epilepsy. Plaintiff at the time was unsure of his condition but informed Defendant of his hospitalizations each time they occurred.

13. On February 12, 2019, Plaintiff was travelling to Coyle, OK to visit his grandmother. During the drive, Plaintiff began to feel lightheaded and felt pain in his chest and had heart palpitations and diverted to the Emergency Room at Alliance Health Midwest in Midwest City, OK for treatment. While undergoing an MRI, Plaintiff began suffering a seizure and was intubated to protect his airway and was placed on a ventilator to assist his breathing.

14. Plaintiff was admitted to the Intensive Care Unit at Alliance Health Midwest, where he remained until he was transferred by ambulance to Deaconess Hospital in Oklahoma City, OK on February 14, 2019.

15. Plaintiff suffered continuous seizure activity and remained on a ventilator from February 14, 2019 through February 21, 2019 when he was gradually weaned from the ventilator as his condition improved.

16. Throughout the time that Plaintiff was placed on a ventilator, he was not responsive to stimuli and could not verbally communicate.

17. On or about February 22, 2019, when Plaintiff woke up in the hospital, he was able to contact his family to let them know that he had been hospitalized due to a seizure. Plaintiff's mother contacted Defendants and advised that Plaintiff had been hospitalized since February 14, 2019 due to his seizures. Additionally, after Plaintiff awoke in the hospital and became more coherent, he contacted his Department Manager, Paul Chappa, via Facebook Messenger and appraised Defendants of his hospitalization and medical condition and was told to bring his medical documentation with him upon his return to work.

18. On February 24, 2019, Plaintiff was discharged from Deaconess with instructions to follow up with his neurologist in 2 to 3 days and was prohibited from driving for six months.

19. Once Plaintiff returned home, a close friend of Plaintiff, Renee Croff, contacted Assistant Manager Alice Gentry on Plaintiff's behalf, as he was still struggling with lucidity, and informed Ms. Gentry of Plaintiff's hospitalization and condition.

20. Although Plaintiff had been discharged from the hospital on February 24, 2019, he remained weak and his mind was foggy from being on a ventilator for nine days. Plaintiff did not begin feeling as though he could return to work until February 27, 2019, at which time he contacted Defendants about doing so and was told to come to the store for a meeting the next day.

21. On or about February 28, 2019, Plaintiff met with Dustin Walters, Store Manager, and was informed that Mr. Walters was terminating him for his absences and failure to inform them about his condition. Plaintiff tried to explain that he had informed his Department Manager, Mr. Chappa, of the situation as soon as he was able to but was told that this "did not count." Mr. Steve LNU, Personnel Manager, also said that he was aware of Plaintiff attempting to

inform Defendant of his hospitalization but Mr. Walters again stated that he would not accept Plaintiff contacting Mr. Chappa via Facebook. Mr. Walters moved forward with the termination and advised Plaintiff that Defendants would consider re-hiring him in six months if his health improved.

## FIRST CLAIM
### (FMLA Interference)

22. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state as follows:

23. Plaintiff gave Defendants adequate notice of his protected medical leave, pursuant to 29 U.S.C. § 2612, as soon as he was physically able to do so.

24. At all times relevant to this action, Plaintiff's illness was a serious health condition, pursuant to 29 C.F.R. § 825.113(a).

25. Plaintiff was entitled to qualified FMLA medical leave pursuant to 29 C.F.R. § 825.200 which states:

> "(a) Except in the case of leave to care for a covered servicemember with a serious injury or illness, an eligible employee's FMLA leave entitlement is limited to a total of 12 workweeks of leave during any 12–month period for any one, or more, of the following reasons:
>
> (4) Because of a serious health condition that makes the employee unable to perform one or more of the essential functions of his or her job;"

26. Plaintiff's termination was a clear, direct, and substantial violation of 29 U.S.C. § 2615 which states, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided under this subpart."

27. Defendants' failure to qualify Plaintiff's unforeseeable leave under the FMLA upon his return to work and to grant restoration of employment was a direct interference with Plaintiff's rights under the FMLA.

28. Defendants terminated Plaintiff as a discriminatory and/or retaliatory act against Plaintiff for exercising his right to qualified medical leave pursuant to the FMLA.

29. Defendants' denial of Plaintiff's FMLA medical leave constitutes interference with Plaintiff's right to qualified FMLA medical leave.

30. Plaintiff is entitled to reinstatement, or front pay in lieu thereof, pursuant to 29 U.S.C. § 2614(a)(1).

**WHEREFORE**, Plaintiff prays that Defendants each appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendants to be in violation of Plaintiff's rights; (2) enjoin the Defendants from engaging in such conduct; (3) enter a judgment for Plaintiff in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and liquidated damages; (4) order Plaintiff be reinstated to his former position, or receive front pay in lieu thereof; and (5) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

### SECOND CLAIM
### (FMLA Retaliation)

31. Plaintiff incorporates and re-alleges the above paragraphs as though fully set forth herein and would further state as follows:

32. Defendants' refusal to allow Plaintiff to continue his employment in response to Plaintiff's request for FMLA leave constitutes a subsequent adverse employment action, pursuant to 29 U.S.C. § 2615.

33. Defendants refused to allow Plaintiff to continue his employment was a direct consequence of Plaintiff's request for qualified FMLA leave.

34. Plaintiff's termination was in retaliation for exercising his right to qualified FMLA medical leave, pursuant to 29 U.S.C. § 2615.

35. As a result of these violations, Defendants thereby injured Plaintiff, depriving him of his rights and privileges of employment for using medical leave due to his serious chronic medical condition.

**WHEREFORE**, Plaintiff prays that Defendants each appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendants to be in violation of Plaintiff's rights; (2) enjoin the Defendants from engaging in such conduct; (3) enter a judgment for Plaintiff in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and liquidated damages; (4) order Plaintiff's be reinstated to his former position, or receive front pay in lieu thereof; and (5) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

Respectfully submitted,

**ARMSTRONG & VAUGHT, P.L.C.**

By: *s/ Charles C. Vaught*
**Charles C. Vaught, OBA #19962**
**Jessica N. Vaught, OBA #33114**
2727 East 21st Street, Suite 505
Tulsa, OK 74114
(918) 582-2500 – *telephone*
(918) 583-1755 – *facsimile*
***Attorneys for Plaintiff***